**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y. D/F

★ JUL 2 9 2011 ★

**BROOKLYN OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ELENA KIEJLICHES,

       Petitioner,

   -against-

A. PEREZ, *Superintendent, Bedford Hills Correctional Facility,*

       Respondent.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-2397 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

  Petitioner pro se Elena Kiejliches ("Kiejliches") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her 2002 state-court conviction for second-degree murder and tampering with physical evidence. (See Pet. (Docket Entry # 1).) For the reasons set forth below, the petition is denied.

## I. STANDARD OF REVIEW

  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

  An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a

1

federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotation marks omitted).

In assessing "clearly established" federal law, a federal district court must confine itself to the holdings, as opposed to the dicta, of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006). Moreover, "Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions." Rodriquez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007); see also Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004). ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.").

A state court's finding of procedural default, absent certain exceptions, bars a federal court from granting habeas relief. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). To overcome such a default, a petitioner must demonstrate either (1) cause and actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Id. at

750. A state court holding that a claim is *both* procedurally barred and without merit is sufficient to invoke a state procedural bar. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000).

A pleading by a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "If a *pro se* litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008).

## II. BACKGROUND

### A. The Murder and Arrest

On the night of March 24, 2000, Kiejliches went up to the room where her husband, Borys Kiejliches ("Borys"), was sleeping, and shot him in the head. (See Resp't Aff. (Docket Entry # 5) at 2.) Kiejliches wrapped Borys's body with beddings and towels, wrapped his head in a black garbage bag, and tied the body with an electrical cord. (Trial Tr. (Docket Entry # 5-4) at 118-19, 947-48, People v. Elena Kiejliches, Ind. No. 151/00 (N.Y. Sup. Ct., Richmond Cnty.))

On the same night, March 24, 2000, Kiejliches called Messiah Justice ("Justice"), her lover, frantic, saying that she needed him to come to the house in a hurry. (Id. at 944.) Justice was a 26-year-old male with a substantial criminal record. (Id. at 882-93.) When Justice arrived at the house a few hours later, Kiejliches led him to the basement and told Justice that she had killed Borys and needed Justice's help. (Id. at 947.) Justice saw a large bundle of sheets wrapped up on the floor, next to red stains. (Id. at 947-48.) They loaded Borys's body into a Range Rover along with toys and teddy bears that had been stained with blood. (Id. at 949-53.) They also cut out a stained portion of the carpet and placed it in a black plastic bag, but that was

3

not placed in the Range Rover. (Id. 953-56.) They both drove to Brooklyn, and Justice disposed of the toys in a dumpster of a school and then discarded the body in an abandoned building. (Id. at 957-60.) Justice later returned to the body, and with another person's assistance, put the wrapped body in a barrel and dumped it in the water in East New York. (Id. at 972-78.)

On April 25, 2000, the body was found wrapped in bedding and towels similar to those found by police during a search of Kiejliches's house. (Id. at 119; 157-58; 185-88.) On May 5, 2000, Justice was arrested in connection with the death of Borys. (Id. at 895-96.) After his arrest, Justice entered into a cooperation agreement with the People on May 11, 2000. (Id. at 896.) Justice pleaded guilty to hindering in the first degree and tampering with physical evidence, with no specific sentence agreed upon. (Id. at 897-99.) Under the agreement, Justice agreed to testify truthfully if called to do so. (Id. at 897.)

On May 15, 2000, Kiejliches was arrested for her husband's murder. (Resp't Aff. (Docket Entry # 5) at 13.)

## B.    The Trial

A trial took place from June 5 to June 25, 2002. Justice, who was the main witness, testified to the facts surrounding Kiejliches's murder of Borys. He testified that Kiejliches told him that Borys had already taken a million dollars from her, and that he wanted to take everything from her, including the kids. (Trial Tr. at 930.) Justice further testified that Kiejliches had called him on the night of March 24, 2000, the night of the murder, to help her, because she had killed Borys. (Id. at 943-47.) Justice relayed how he had helped Kiejliches move the body, and how he eventually dumped it in the water in East New York. (Id. at 949-60, 973-78.)

In addition to Justice's testimony, several other witnesses testified at trial. Two expert witnesses and a motive witness testified. The first expert witness, Dr. Henry Nields ("Nields"), the City Medical Examiner who conducted the autopsy on Borys, testified at trial about the autopsy he performed, as well as the results of the toxicology test, which he did not perform. (Id. at 1753-69, 1784.) The second expert witness, Detective Robert Tamburri, was a ballistics expert who testified about, among other things, the distance from the firearm to the impact site, and whether the gun shot wound on Borys's head was a contact wound. (Id. at 1806-07, 1810.) Yuri Sverdlov ("Sverdlov"), Borys's stockbroker and financial consultant, testified about Kiejliches's motive. Sverdlov testified that, in January of 2000, when Borys attempted to remove Kiejliches from a joint account, Borys and Kiejliches had a loud argument over the phone. (Id. at 641-43.) Borys informed Kiejliches that he was going to remove her from this account, and others, because he knew she was having an affair. (Id. at 642-43.)

On June 25, 2002 Kiejliches was convicted by a trial jury of second-degree murder and tampering with physical evidence. (See Pet. (Docket Entry # 1) at 1.)

### C.  Petitioner's Appeals

The Second Department of the Appellate Division affirmed the judgment on April 4, 2006. (Id. at 2.) Petitioner's leave to appeal to the New York Court of Appeals was denied on June 7, 2006. (Id.) Petitioner then filed a C.P.L. § 440 motion, on May 21, 2007, in the Supreme Court of New York in Richmond County. (Id. at 3.)

### D.  Petitioner's Habeas Corpus Action

On June 11, 2007, Petitioner pro se Kiejliches petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging her 2002 state-court conviction for second-degree murder and tampering with physical evidence. (Id. at 1.) After concluding that Kiejliches had filed a

"mixed petition" containing both exhausted and unexhausted claims (see Order (Docket Entry # 10) at 4), the court granted Kiejliches's motion to stay the petition so that she could exhaust her claims in state court through her C.P.L. § 440 motion. (Id. at 6.) On February 5, 2010, the court granted Kiejliches leave to amend her petition to incorporate her newly exhausted claims. (See Order (Docket Entry # 20) at 6.)

On March 22, 2011, Kiejliches filed a motion seeking a second stay and abeyance of her petition so that she may exhaust an additional claim—namely, ineffective assistance of counsel due to an inadequate production of evidence to refute a key prosecution witness—in state court. (See Docket Entry # 26 at 1); (see Docket Entry # 26-1 at 2.) In an Order dated March 31, 2011, the court granted Kiejliches thirty days to (1) submit a reply to Respondent's opposition, including an explanation why the court should consider such a reply in light of its untimeliness; and (2) show good cause for her failure to exhaust her ineffective assistance of trial counsel claim in state court. (See Order (Docket Entry # 27).)

On April 25, 2011, Kiejliches responded to the court's March 31, 2011 Order. (See Docket Entry # 30.) In her reply, Kiejliches claims that she never received Respondent's opposition to her Amended Petition. (See Docket Entry # 30 at 1.)[1] On May 4, 2011, Respondent filed an affidavit in opposition to Kiejliches's motion for a second stay of her habeas petition. (See Resp. Aff. (Docket Entry # 29).) The court denied that motion for the second stay of her habeas petition. (See Order (Docket Entry # 31) at 2-4.)

---

[1] The court finds that this claim is irreconcilable with Kiejliches' previous motions requesting extensions of time to reply to Respondent's opposition. For example, in her April 14, 2010 request for an extension, Kiejliches noted that "the respondent's affidavit in opposition to the petitioners amended petition . . . involves complex issues and substantial case law which petitioner needs to research." (Docket Entry # 22 at 1.) Furthermore, in her May 25, 2010 request for an extension, Kiejliches sought an additional ten days to file her reply to Respondent's opposition to her amended petition because of her "very limited access to the prison Law Library." (Docket Entry # 24 at 1.) Accordingly, the court refuses to grant Kiejliches any further extensions of time to file a reply to Respondent's opposition. Any such reply will not be considered in deciding Kiejliches' habeas petition in light of its excessive untimeliness.

## III.   DISCUSSION

### A.   Weight and Legal Sufficiency of the Evidence

Kiejliches claims, despite the jury's verdict, that the prosecution failed to prove her guilt

of murder and that the verdict was against the weight of the evidence.  Kiejliches argues that

Justice, whose testimony was central to the People's case, was impermissibly biased, due to his

cooperation agreement with the Staten Island District Attorney's office and members of the New

York Police Department and therefore not sufficiently credible.  (Pet. (Docket Entry # 1-3).)  "A

weight of the evidence claim, however, is purely grounded in state law."  See Sweeney v.

Superintendent of the Watertown Corr. Facility, No. 06-CV-0663 (SDF), 2007 U.S. Dist. LEXIS

54730, at *21-22 (E.D.N.Y. July 27, 2007) (citing N.Y. Crim. Proc. Law § 470.15(5)).  Yet, a

federal court may grant a writ of habeas corpus to a state prisoner "*only* on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Consequently, the court lacks

jurisdiction over Kiejliches's weight-of-the-evidence claim.

Since Kiejliches is a pro se petitioner, the court liberally construes this claim as a legal

sufficiency claim, which can be decided by a federal habeas court.  See Correa v. Duncan, 172 F.

Supp. 2d 378, 381 (E.D.N.Y. 2001) ("[A] legal sufficiency claim is based on federal due process

principles.").  However, a federal habeas court cannot consider a federal claim from a petitioner

in state custody if the state court adjudication of the claim "rests on a state law ground that is

independent of the federal question and adequate to support the judgment.  This rule applies

whether the state law ground is substantive or procedural."  Coleman v. Thompson, 501 U.S.

722, 729 (1991).  Where an appellate court finds a petitioner's legal-insufficiency-of-evidence-

claim to be unpreserved for appellate review, this "[p]rocedural waiver under state law

constitutes an independent and adequate state ground that bars federal consideration of the substantive claim on habeas corpus." Rustici v. Phillips, 497 F. Supp. 2d 452, 482 (E.D.N.Y. 2007) (internal quotation marks and citation omitted). Here, the Second Department found that "[t]he defendant's contention that the evidence was not legally sufficient to establish that she committed murder in the second degree is unpreserved for appellate review." People v. Kiejliches, 811 N.Y.S.2d 587, 588 (2d Dep't. 2006). The Appellate Division's finding of procedural default therefore constitutes an independent and adequate state ground that bars federal habeas review of Kiejliches's claim. See Rustici, 497 F. Supp. 2d at 482.

A petitioner may overcome such a default, however, by demonstrating either (1) cause and actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). To establish cause, a petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner can show a fundamental miscarriage of justice if he or she shows that the constitutional violation probably caused the conviction of one innocent of the crime. Id. at 495-96.

Here, Kiejliches shows neither cause nor prejudice, nor does she show a fundamental miscarriage of justice. She makes no showing that Justice was too uncredible for the jury to credit his testimony. She fails to show that she was prevented from adequately raising her legal sufficiency claim on appeal, and fails to make any showing of actual innocence.

Further, if a state court holding contains a plain statement that a claim is procedurally barred, then the federal habeas court may not review it, even if the state court—as the Second Department in Kiejliches, 811 N.Y.S.2d at 588 did—also rejected the claim on the merits in the

alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[a] state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision.).

Accordingly, Kiejliches cannot overcome the procedural bar to her claim of legally insufficient evidence, and habeas corpus relief is barred.

### B.    Confrontation Clause Claims

Kiejliches claims that the court erred in allowing the "testimony of [the] toxicologist results from a witness, [Nields], who did not do the testing." (Pet. (Docket Entry # 1-3).) Nields, a member of the Office of the Chief Medical Examiner ("OCME") performed the autopsy, and testified as to the toxicology portion, which was performed by other laboratory technicians in the OCME. (Trial Tr. at 1739.) The toxicology report revealed traces of Phenobarbital, an anti-depressant, in the blood and possibly urine, as well as alcohol in his blood and urine. (Id. at 1768.) In her habeas petition, Kiejliches argues that, "the autopsy report and toxicology report were erroneously admitted as hearsay." (Pet. (Docket Entry # 1-3).) Kiejliches contends that because Nields testified as to the toxicology report, which he did not actually perform, she was "unable to confront the actual tester," which deprived her of her rights "under the confrontation clause." (Id.)

As previously noted, a federal habeas court may only grant relief when the state court's adjudication on the merits was "contrary to, or involved an unreasonable application of, *clearly established* Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added). "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v.

9

Taylor, 529 U.S. 362, 412-13 (2000). Therefore, we review the confrontation clause issues as of the date of the relevant state court decisions. See Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011) ("State-court decisions are measured against this Court's precedents as of 'the time the state court renders its decision.'" (quoting Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003))).

All of the relevant state court decisions occurred before 2009. So this includes Crawford, which was decided in 2004, but does not include Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009) which held that the admission of the affidavits of the laboratory analysts, who did not testify at trial, violates the confrontation clause because such affidavits are "testimonial." Id. at 2536-40. The proposition stated in Melendez-Diaz was not clearly established law at the time of the state court decision in this case. See Philips v. Brown, No. 08-CV-2625 (FB), No. 08-CV-2626 (FB), 2011 U.S. Dist. LEXIS 54815, at *20 (E.D.N.Y. May 20, 2011) ("Since Melendez-Diaz postdates the state-court decisions here by several years, it cannot be said that the decisions were contrary to, or unreasonable applications of, clearly established federal law."); see also Vega v. Walsh, No. 06-CV-6492 (ARR), 2010 U.S. Dist. LEXIS 53715, at *8-11 (E.D.N.Y. May 28, 2010) (Melendez-Diaz is a "new rule" which should not be made retroactively applicable to Petitioner.).

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the admission of out-of-court "testimonial" statements unless the declarant appears at trial, the witness is unavailable, or the defendant has had a prior opportunity to cross-examine the declarant regarding the statement. Id. at 53-54. While the Crawford court did not fully define the scope of testimonial statements, id. at 68, it did offer "various formulations of this core class of testimonial statements," id. at 51, and held that certain statements "by their nature [are] not testimonial," such as business records. Id. at 56.

10

In United States v. Feliz, 467 F.3d 227 (2d Cir. 2006), the Second Circuit drew upon Crawford's reference to business records as non-testimonial, holding that "where a statement is properly determined to be a business record as defined by [Rule 803(6) of the Federal Rules of Evidence], it is not testimonial within the meaning of Crawford, even where the declarant is aware that it may be available for later use at a trial." Feliz, 467 F.3d at 236. Watkins v. Artus, No. 08-CV-5891 (RJH), 2010 U.S. Dist. LEXIS 130083 (S.D.N.Y. July 22, 2010), explained that, "[Feliz] did not base its holding directly upon the fact that Crawford had referenced business records as an example of non-testimonial evidence . . . . Rather, the court moved past the 'superficial appeal' of such reasoning to consider the characteristics of a business record that render it 'fundamentally inconsistent with what the Supreme Court has suggested comprise the defining characteristics of testimonial evidence.'" Watkins, 2010 U.S. Dist. LEXIS 130083, at *37-38 n.6 (quoting Feliz, 467 F.3d at 233-34) (internal citation omitted). Furthermore, Feliz implied that autopsy reports were not testimonial, emphasizing the fact that autopsy reports were generated regardless of the existence of any legal proceedings. Feliz, 467 F.3d at 236.

The reasoning of Feliz, and Watkins apply with equal force to the toxicology reports in this case. Consequently, the state court reasonably applied Crawford and other existing Supreme Court precedent when it concluded that Nields's testimony regarding toxicology reports did not violate the confrontation clause. Thus, Petitioner's motion must be denied.

Moreover, even if the toxicology reports are deemed testimonial and a violation of Kiejliches's constitutional rights, the affect of Nields' testimony is harmless. "It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review." United States v. McClain, 377 F.3d 219, 222 (2d Cir. 2004). "[I]n 2254 proceedings a court must assess the prejudicial impact of constitutional error in a

11

state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman." Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (internal citations omitted). In order to be entitled to habeas relief, Petitioner must demonstrate that any constitutional error "had substantial and injurious effect or influence in determining the jury's verdict" and that the error resulted in "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal citation and quotation marks omitted).

On direct examination, Nields testified that the depressant found in the deceased's body could have had an affect on his alertness, and also testified to a possible synergistic effect of the alcohol and the depressant found in the deceased's blood. (Trial Tr. at 1768-69.) Defense counsel on direct appeal argued that the toxicology evidence was not harmless, because it allowed the People to argue that "Borys's depressed nervous system, rendered that way by the drugs found in his blood, enabled the slight appellant to get the better of the almost 250 pound Borys." (See Br. for Def. (Docket Entry # 5-2) at 41.) On cross-examination, however, Petitioner's attorney was able to bring out: the difference between the small amount of the depressant in the deceased's body and the usual therapeutic amount; Nields opinion that the drug had probably been taken days before the death; and the inability to prove the effect it had on the deceased just prior to death. (Trial Tr. at 1784-92.) Regardless of this evidence, the other evidence of guilt, including Justice's testimony that Kiejliches had called Justice and asked him to help get rid of the body was overwhelming. The issue of whether Borys was affected by drugs or not was peripheral to the issues at trial. Thus, even if the state court erred by admitting this testimony, such error was harmless.

In Kiejliches's second confrontation claim she asserts that "[t]he court allowed admission of Sverdlov's hearsay testimony regarding [Petitioner's] alleged motive which violated the [Petitioner's right] to confront [the] witness." (Pet. (Docket Entry # 1-3) at 3-4.) Yuri Sverdlov ("Sverdlov"), Borys's financial planner, testified that several months before the murder Borys came to his office and wanted to remove Kiejliches's access to an account worth over one million dollars. When Sverdlov informed Borys that he had to get signed authorization from Petitioner, Borys called Kiejliches and had a loud argument with her, and told her that he not only wanted to remove her from this account, but from all others as well. (Trial Tr. at 637-45.)

"However, there is no Confrontation Clause issue when the out-of-court statements are admitted for purposes other than showing the truth of the matter asserted." Reyes v. Ercole, No. 08-CV-4749 (JFB), 2010 U.S. Dist. LEXIS 53342, at *21 (E.D.N.Y. June 1, 2010) (citing Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004)); United States v. Logan, 419 F.3d 172, 177 (2d Cir. 2005). The Second Circuit has stated that "[t]estimony containing hearsay may be admissible not for its truth but as background information if (1) the non-hearsay purpose by which the evidence is sought to be justified is relevant and (2) the probative value of this evidence for its non-hearsay purpose is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." Ryan v. Miller, 303 F.3d 231, 252 (2d Cir. 2002); see also Benjamin v. Cunningham, No. 05-CV-4372 (NGG), 2007 U.S. Dist. LEXIS 53888, at *17-18 (E.D.N.Y. July 24, 2007) (holding that testimony does not violate the confrontation clause where it was admitted not to establish whether the threats actually occurred, but rather to explain the victim's state of mind at the time he made an initial recantation in the defense counsel's office, and where the statements came with specific jury instructions).

13

Sverdlov's testimony was admitted, not to prove the truth of the matter asserted, but to prove Petitioner's state of mind after hearing that Borys wanted to immediately remove her from bank accounts: this upset her and gave her a motive to commit murder. Furthermore, the court in their final instructions to the jury stated, as it had during the trial, that the jury should consider the out-of-court statements made by Borys, if they believe they were said to Kiejliches, only as evidence of Kiejliches's state of mind, and not for the truth of the matter asserted. (Trial Tr. at 645, 2090.) Thus, none of these statements violated the confrontation clause, and consequently, the state court's rulings were not contrary to or an unreasonable application of clearly established federal law.

In Kiejliches's final confrontation clause claim, she asserted that her right to "confront" Justice was violated. (Pet. (Docket Entry # 1-3) at 2-3.) In her supplemental pro se brief for direct appeal, Kiejliches claims that "although [Petitioner's] defense counsel was able to cross-examine Messiah Justice, cross was interrupted because he fled without completing his testimony for defense." (Pet'r Br. (Docket Entry # 1-2) at 14.) The record clearly indicates, however, that cross-examination of Justice was not cut short. Defense counsel had an opportunity to cross and re-cross examine Justice and stated that they had "no further questions" for Justice. (Trial Tr. at 1487.) Thus, Kiejliches's claim has no basis in fact. Consequently, the Second Department's decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d), nor was it contrary to, or an unreasonable application of, federal law. Thus, Petitioner's claim fails.

### C.   Due Process: Right to a Fair Trial

Kiejliches makes several claims as to why she was unconstitutionally denied a fair trial in violation of due process. First, Kiejliches argues that she was denied due process by the

14

admission of Justice's testimony. She contends that Justice's testimony was impermissibly unreliable because it was self-serving due to his cooperation agreement with the Staten Island District Attorney's office and members of the New York Police Department. (Pet. (Docket Entry # 1-3) at 2.)

This claim has no merit. It is axiomatic that using a cooperating witness does not violate due process. The jury was instructed by the court that they were to scrutinize Justice's testimony in light of the fact that Justice was a cooperating witness, and may receive a benefit for testifying. (Trial Tr. at 2071-72.) Consequently, the Appellate Division's determination that Petitioner's claim challenging the admission of Justice's testimony at trial was without merit was not contrary to, nor an unreasonable application of, federal law. As such, habeas relief is not warranted on this claim.

Kiejliches next claims that the court allowed the "ballistics expert to testify regarding medical opinions he was not qualified to impart" and that this violated due process. (Pet. (Docket Entry # 1-3) at 3.) "Admission of expert testimony is committed to the sound discretion of the trial judge . . . . [E]ven if [the] testimony was improper, admission of such testimony does not violate due process unless it was so unfair as to 'violate[] fundamental conceptions of justice.'" Neil v. Walsh, No. 07-CV-6685 (DLC), 2009 U.S. Dist. LEXIS 11817, at *19 (S.D.N.Y. February 17, 2009) (quoting Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998)). "[I]n order to succeed on a petition for habeas corpus, [petitioner] must allege that the erroneous evidentiary ruling of the state court rendered the trial fundamentally unfair." Reyes v. Artuz, No. 99-CV-801 (FB), 2000 U.S. Dist. LEXIS 17800, at *7 (E.D.N.Y. December 5, 2000) (citing Dowling v. United States, 493 U.S. 342, 352-53 (1990)).

Kiejliches's claim is meritless because no medical opinion was ever elicited. Defense counsel raised an objection during the ballistic expert's testimony, citing a concern that the ballistic expert would give a medical opinion. (Trial Tr. at 1808-09.) The objection was withdrawn after counsel was assured at sidebar that the testimony was only going to be about the distance from the firearm to the impact site, and whether it was a contact wound. (Id.) The Ballistic expert than testified as to the fact that the wound was a contact wound, or at least a close-to-contact wound, without presenting any medical testimony, and no further objection was made. (Id. at 1810.) Since, contrary to Petitioner's contention, no improper testimony was given, the Second Department's decision could not result "in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Consequently, Petitioner's claim fails.

## D.       Brady Violation Claims

Kiejliches brings two claims arguing that her due process rights were violated by the People's failure to comply with Brady obligations. In Brady v. Maryland, 373 U.S. 83 (1963), the Court held that the prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. Id. at 87. "A finding of materiality of the evidence is required under Brady." Giglio v. United States, 405 U.S. 150, 154 (1972). "[Exculpatory] evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 527 U.S. 263, 280 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). To establish a violation, the petitioner must show: "[(1)] that the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; [(2)] that evidence was suppressed by the state, either willfully or inadvertently; [and] [(3)] that prejudice ensued." Id. at 281-82.

Kiejliches's first <u>Brady</u> claim arises from a 10:54 p.m. phone call on the night of the murder. The records of outgoing call from Petitioner's house and of incoming calls of Justice's cell and house phone indicate that two calls were made to Justice on the night of the murder: one to his house on 10:52 that connected; and one to his cell phone at 10:54 p.m. that went to voicemail. (Trial Tr. at 1877-79.) Justice incorrectly testified that he had spoken to Kiejliches at 10:54 p.m., (<u>id.</u> at 1368), and Kiejliches was frantically telling him to come over to her house. Defense counsel argued during summation that the records indicate that no conversation could have taken place at 10:54 p.m., thus calling into question Justice's testimony. (<u>Id.</u> at 1874-76.)

Kiejliches appears to argue, unconvincingly, in her habeas petition that the fact that the 10:54 p.m. voicemail occurred, proves that she never spoke to Justice on the phone at either 10:54 p.m., as Justice testified, or 10:52 p.m. as the phone records showed. (Pet. (Docket Entry # 1-3).) Her argument essentially seems to be that if she had spoken to Justice at 10:52 p.m. or 10:54 p.m., then she would not have also called and left a voicemail. Thus, she argues, the fact that a voicemail was left proves no phone call occurred.

The defense argued at trial that there was a <u>Brady</u> violation because the People must have known about the 10:54 p.m. voicemail before trial. Kiejliches infers this knowledge from the belief that the People raised the 10:54 p.m. call going to voicemail for the first time in summation. (Trial Tr. at 2033-34.) The People replied by stating that they had no knowledge of the voicemail and that all notes they had, were turned over. (<u>Id.</u> at 2036-37.) The trial court reviewed the facts of the testimony and determined that there was no <u>Brady</u> violation because there had been evidence of the 10:54 p.m. voicemail introduced earlier at trial. (<u>Id.</u> at 2055.) Thus, the trial court concluded that the People raising the evidence in summation did not prove knowledge of the call before trial. (<u>Id.</u>)

After reviewing the transcript, the court concludes that Petitioner has not shown that the New York court's decisions were based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Because Kiejliches made a wholly insufficient showing that the People had the evidence of voicemail in their possession, let alone that the voicemail is of sufficient import to trigger <u>Brady</u> obligations, Kiejliches has not shown that the state court's legal conclusions as to the <u>Brady</u> violations were contrary to or an unreasonable application of clearly established federal law.

Kiejliches also claims that the People's admitted loss of a microcassette tape that contained a recorded conversation between Justice and Kiejliches violated <u>Brady</u>. Justice made a phone call from the police station to Kiejliches in order to try to elicit information from Kiejliches as to the events that transpired with her husband. (Trial Tr. at 290-93.) In her supplemental brief, Kiejliches claims that the microcassette tape consisted of a conversation between herself and Justice, in which Justice tells her that he had to kill Borys, because he was a threat after he learned about the affair. (Pet'r Br. (Docket Entry # 1-2) at 47.).

However, Petitioner fails to state a claim under <u>Brady</u>. "Evidence is not suppressed by the government within the meaning of Brady if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage [of that] evidence. Where . . . the facts are already known by the defendant, there is no improper suppression within the meaning of <u>Brady</u>." <u>Laurey v. Graham</u>, 596 F. Supp. 2d 743, 764 (W.D.N.Y. 2008) (internal citations and quotation marks omitted). <u>Brady</u> claims deal with disclosure of facts and notification, not the actual production of evidence for trial. Petitioner was not precluded from the evidence, she took part in the conversation, and could have introduced this at trial.

Therefore, Kiejliches has not shown that the state court's legal conclusions were contrary to or an unreasonable application of clearly established federal law.

Nevertheless, since Kiejliches is a pro se petitioner, the court construes this claim as a due process claim for failure to preserve the evidence. It is uncontested that the People did not make available the microcassette with the alleged conversation. (Trial Tr. at 2089.)

Petitioner's claim nonetheless fails because "[u]nless a criminal defendant can show *bad faith* . . . failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988) (emphasis added). In her supplemental pro se brief Petitioner asserts that "[t]he loss of this material was negligent," (Pet'r Br. (Docket Entry # 1-2) at 52), not bad faith. Furthermore, not only did Petitioner fail to assert bad faith, but no facts were presented, to this court or the state courts, which could support a finding of bad faith. The trial record shows that the explanations for the tape being lost was either that the tape was placed in a box and fell out, or that the police put it in a case file and also in an envelope and gave it to an Assistant District Attorney, who lost it. (Trial Tr. at 2055-57.) Neither of these scenarios, without more of a showing by Petitioner, constitutes "bad faith."

Moreover, any harm was mitigated by the court's instructions to the jury. At the jury charge, the judge gave an adverse inference instruction, stating that jurors may consider any explanation heard during trial as to why the People did not produce the tape, and the jurors may infer, if they find proper, that had the tape been produced it may not have supported or may even have contradicted the testimony of the witnesses. (Id. at 2089.) Therefore, this claim does not warrant habeas relief because the state court's decision is not contrary to, nor an unreasonable application of, federal law.

19

### E. Perjury

Kiejliches twice in her habeas petition refers to, "Justice's perjured testimony." (Pet. (Docket Entry # 1-3).) "The Supreme Court analyzes claims for wrongful conviction based on perjured testimony under the Due Process Clause of the Fourteenth Amendment." Drake v. Portundo, 321 F.3d 338, 344-45 (2d Cir. 2003) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)). Further, "[u]nder this standard, the Court has said that the conviction must be set aside if (1) 'the prosecution knew, or should have known, of the perjury,' and (2) 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Id. at 345 (citing United States v. Agurs, 427 U.S. 97, 103 (1976)). However, the Court of Appeals has held that, because the Supreme Court has not clearly established that habeas relief is available in the complete absence of prosecutorial knowledge of perjury, AEDPA prevents granting of the writ if such knowledge is lacking. Id. at 345 n.2.

Even if Kiejliches can prove that Justice's testimony was perjured, which is not supported by the record, she does not claim, nor can she prove by the record, that the prosecutors knew of, or should have known, of the perjury. Thus, Kiejliches's claim that Justice's testimony was perjured, does not warrant habeas relief because the state court's decision is not contrary to, nor an unreasonable application of, federal law.

### F. Juror Misconduct

In Kiejliches's amended petition, she asserts that evidence of juror misconduct was discovered after trial. (Am. Pet. (Docket Entry # 16).) Such purported misconduct was revealed in a conversation between a juror and her co-worker, Michael Zapken, about jury deliberations. The juror misconduct claims consist of: (1) Prejudicial pre-deliberation comments made among jurors; (2) Juror's perjury during Voire Dire, for misrepresenting whether she knew any of the

parties; (3) The jury was prejudiced because a juror knew Staten Island Assistant District Attorney De Oliviera prior to trial; and (4) Jurors read newspaper accounts of the case, which prejudicially influenced them. (Id.)

The Supreme Court of New York denied Kiejliches's juror misconduct claim, alleged in her post-trial 440 motion, pursuant to C.P.L. § 440.30(4)(b), due to a lack of sworn allegations substantiating the claims. (See Appellate Division Order dated Dec. 26, 2008 (Docket Entry # 16).) As noted above, a federal habeas court cannot consider a federal claim from a petitioner in state custody if the state court adjudication of the claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural." Coleman v. Thompson, 501 U.S. 722, 729 (1991). "To be independent, a state court's holding must rest on state law that is not 'interwoven with the federal law.'" Rincon v. Burge, No. 05-CV-0686 (LTS),05-CV-0687 (LTS), 2010 U.S. Dist. LEXIS 143266, at *70 (S.D.N.Y. September 8, 2010) (quoting Jimenez v. Walker, 458 F.3d 130, 137 (2d Cir. 2006)). To be adequate, it must be "based on a rule that is 'firmly established and regularly followed'" by the state courts. Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

The 440 court's decision to bar the claim for failure to include an affidavit, as required by § 440.30(4)(b), a state law statute, was independent of the court's finding on the federal juror misconduct claim. (See Appellate Division Order dated Dec. 26, 2008 (Docket Entry # 16).) Section 440.30(4)(b) is also adequate to support the judgment because it is a firmly established rule that is regularly followed by the state courts. See People v. Ozuna, 7 N.Y.3d 913, 915 (2006); People v Medina, 912 N.Y.S.2d 415, 415 (2d Dep't. 2010). Therefore, the court concludes that the 440 court's decision to deny Kiejliches's claim pursuant to C.P.L.

§ 440.30(4)(b) is an independent and adequate state procedural bar, and thus this court cannot consider the claim. See generally Williams v. McGinnis, No. 04-CV-1005 (NGG), 2006 U.S. Dist. LEXIS 29400, at *27-28 (E.D.N.Y. May 15, 2006).

The fact that the state court decided this issue on substantive grounds, in addition to procedural, does not make habeas review available where it would otherwise be foreclosed. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 2000) ("[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim."); accord Harris v. Reed, 489 U.S. 255, 265 n. 10 (1989). The state court relied on a state procedural default in denying Kiejliches's motion, and she is, therefore, foreclosed from raising this claim on federal habeas review.

Furthermore, Petitioner shows neither cause nor prejudice, nor does she show a fundamental miscarriage of justice, in order to overcome this procedural default. She makes no showing of any external factor that existed, which impeded her ability to have sworn allegations substantiating the claims. She also fails to make any showing of actual innocence.

Nevertheless, even if the denial of the § 440.30(4)(b) motion by the lower court is not an independent and adequate state procedural bar, Kiejliches's claim still fails.[2] A federal court may overturn a state court conviction on the ground of juror misconduct only in egregious circumstances. See Anderson v. Miller, 346 F.3d 315, 324 (2d Cir. 2003) (affirming denial of habeas relief where two jurors "might have experienced severe emotional distress within the jury room" and "subjectively felt pressured into rendering guilty verdicts"). In the § 440 motion here,

---

[2] The Supreme Court of New York adjudicated this claim on the merits by finding that, "even if accepted at face value the transcript does not demonstrate any juror misconduct and does nothing to overcome the presumption that the jury followed the court's repeated instructions." (See Appellate Division Order dated Dec. 26, 2008 (Docket Entry # 16).) Accordingly, the Supreme Court's denial of the 440 motion is entitled to deference under AEDPA.

the New York Supreme Court found that "even if accepted at face value the transcript does not demonstrate any juror misconduct." (See Appellate Division Order dated Dec. 26, 2008 (Docket Entry # 16).) After reviewing the transcript, it is apparent that Kiejliches's alleged incidences of juror misconduct are not egregious. Therefore, this court concludes that Petitioner has not shown that the New York court's decisions were based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In addition, Kiejliches has not shown that the state court's legal conclusions were contrary to or an unreasonable application of clearly established federal law. Thus, Petitioner's claim is denied.

### G.    Ineffective Assistance of Counsel

Kiejliches claims that counsel was ineffective for not filing a motion to change venue due to the amount of media coverage. Kiejliches believes this biased the jury in violation of her due process rights. (Am. Pet. (Docket Entry # 16).) The § 440 court ruled that this claim "is without merit and therefore denied." (See Appellate Division Order dated Dec. 26, 2008 (Docket Entry # 16).)

To prevail on an ineffective assistance of counsel claim, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the [petitioner]." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To show prejudice under Strickland, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

Kiejliches's attorneys were not ineffective in failing to move for a change in venue. See United States v. Kennedy, 21 F. App'x 82, 86 (2d Cir. 2001). ("His counsel's failure to pursue

the motion to change venue was not objectively unreasonable. The court had little trouble empaneling a fair and impartial jury and . . . the . . . publicity had not caused a clear and convincing buildup of prejudice among the jurors." (internal citations and quotation marks omitted)). In the § 440 decision, the court reasoned, "after voir dire only those jurors who assured the court that they could be fair and impartial were selected for service, and after completing the jury selection the defense had one preemptory challenge remaining." (See Appellate Division Order dated Dec. 26, 2008 (Docket Entry # 16).) Thus, the defense did not have to empanel any juror to which it had remaining objections. Consequently, the Appellate Division's denial of Petitioner's claim challenging the assistance of counsel was not contrary to, nor an unreasonable application of, federal law. As such, habeas relief is not warranted on this claim.

## IV. CONCLUSION

For the foregoing reasons, Kiejliches's petition for habeas corpus is DENIED. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore, in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 28, 2011

NICHOLAS G. GARAUFIS
United States District Judge

24